[No. 3338-1.    Division One.    July 26, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. MATTHEW J. JUBIE, *Respondent.*

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for appellant.

*David C. Mitchell* of *Snohomish County Public Defender,* for respondent.

JAMES, J.—In two counts of an amended information, the State charged that defendant Jubie unlawfully and feloniously "delivered" controlled substances "as proscribed by RCW 69.50.401." A third count charged that he "wilfully, unlawfully and feloniously did sell for profit a controlled

substance, to-wit: LSD, as proscribed by RCW 69.50.401." Jubie waived his right to a jury trial.

After the State had rested, the trial judge sustained Jubie's challenge that the State's evidence was insufficient to support conviction on any of the three counts. An order of dismissal was entered "for failure of the State to meet its burden in the presentation of its case."

The State's evidence established that an officer of the Washington State Patrol Drug Control Assistance Unit was introduced to Jubie at a home in rural Snohomish County. The officer told Jubie that he was a drug dealer and asked him if he knew where he could purchase some drugs. The officer told Jubie that he intended sending drugs to Alaska. Jubie replied that he believed he could arrange the purchase of a pound of marijuana. Jubie told the officer that he had bought LSD and a "balloon" of heroin earlier that week.

At Jubie's direction, the officer drove him to another residence. On the way, Jubie stated that the officer was not to enter the house when he arranged the buy. After returning to the car to report how much marijuana was available, Jubie was given $140 and he reentered the house. Shortly thereafter, he came back to the officer's car with a plastic bag containing marijuana. Jubie was given an ounce, or "lid," of the marijuana for himself. Jubie gave the officer his phone number for use in connection with further drug purchases.

Several days later, the officer phoned Jubie to arrange the purchase of 100 "hits" of LSD and a quantity of "hash oil," a liquified and concentrated form of marijuana. The officer picked up Jubie and drove him to another residence in the same vicinity but not the one visited on the occasion of the purchase of the marijuana. Jubie again went into the house alone, returned, and quoted prices for the LSD and the hash oil. He was given $135, went back to the house, and returned with the drugs. Before turning the drugs over to the officer, he asked for and received one "hit of acid." After this transaction was completed, the officer told Jubie

that he would be interested in buying a quarter to a half ounce of rock cocaine. He also told Jubie that he would be interested in buying "smack" (heroin). Jubie agreed to try to locate the drugs.

About 2 weeks later, the officer telephoned Jubie and told him that he had just returned from Alaska and was interested in buying more drugs. It was again arranged that the officer would pick Jubie up and the two of them this time drove to the house where Jubie made the first purchase of marijuana for the officer. Once again, Jubie left the car, returned to quote a price, took the money, and reentered the house to obtain the drugs. On this occasion, the transaction was $250 for 300 LSD pills. The officer compensated Jubie by giving him $10 in cash and five or six pills. Before Jubie went in to obtain the drugs, the officer asked if he could go in and deal directly, but Jubie replied that the person from whom he was obtaining the drugs would not deal with a stranger. During the drive back to Jubie's residence, the officer again inquired about cocaine. Jubie informed him that "the guy was sitting on it or didn't want to sell the drugs at the time." The officer told Jubie that he would get back to him later on.

The threshold question presented by the appeal is whether the order of dismissal is appealable. We hold that it is not. The United States Constitution and most state constitutions, including Washington's,[1] provide that no person shall twice be put in jeopardy for the same offense. 21 Am. Jur. 2d *Criminal Law* § 165 (1965). Such provisions reflect a formal recognition of a long recognized common-law principle that the all-powerful state should not be permitted a second opportunity if it fails in its first attempt to prove an accused's guilt.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an indi-

---

[1] "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense." Const. art. 1, § 9.

vidual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity;
. . .

*Green v. United States*, 355 U.S. 184, 187, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957).

In *State v. Brunn*, 22 Wn.2d 120, 154 P.2d 826, 157 A.L.R. 1049 (1945), our Supreme Court dealt at length with a claim of double jeopardy asserted as a bar to the State's right to appeal from an order of dismissal upon a challenge to the sufficiency of the State's evidence. The court concluded that by Laws of 1925, 1st Ex. Sess., ch. 150, § 7, p. 423, codified as Rem. Rev. Stat. § 2183-1(5), the State was given the right to appeal from such a disposition and that the statute was a "valid enactment." *State v. Brunn, supra* at 142. The statute which the *Brunn* court found to be "valid" provided that the State could appeal from "[a]ny order which in effect abates or determines the action, or discontinues the same, otherwise than by an acquittal of the defendant *by a jury*." (Italics ours.) Laws of 1925, 1st Ex. Sess., ch. 150, § 7, p. 423.

The *Brunn* court was persuaded that by requiring an "acquittal of the defendant by a jury," the legislature had "plainly [indicated] that its dominant purpose was to abolish the finality of *one-man* acquittals" which were the result of the "granting [of] a challenge to the sufficiency of the evidence at the close of the state's case." *State v. Brunn, supra* at 137.

But the statute considered in *Brunn* was superseded by CAROA 14(8)(5) and significantly amended to read, "otherwise than by a verdict *or judgment* of not guilty." (Italics ours.)[2] "One-man" acquittals are no longer the anath-

---

[2]CAROA 14(8)(5) has been superseded by RAP 2.2(b)(1) effective July 1, 1976. While not applicable to this case since notice of appeal was filed prior to the effective date of the rule change, nevertheless, the new rule retains the substance of the old rule upon which our opinion is based and, in addition, provides that the State may appeal "only if the appeal will not place the defendant in double jeopardy." RAP 2.2(b). The new rule provides:

*Final Decision, Except Not Guilty.* A decision which in effect

ema envisaged by the *Brunn* court. To the contrary, they are expressly contemplated by CAROA 14(8)(5). The State may no longer appeal from a "judgment of not guilty."

Clearly, the order of dismissal in this case abated, determined, or discontinued the action. The dispositive question is whether the order of dismissal was tantamount to a "judgment of not guilty."

A review of the record discloses that at the initial argument concerning Jubie's motion to dismiss, both the State and Jubie agreed that *State v. Walker*, 82 Wn.2d 851, 514 P.2d 919 (1973) was controlling. The issue in *Walker* at page 857 was whether the accused was "an agent of the seller" of drugs as well as the agent of the buyer.

The trial judge accepted the parties' agreement that *Walker* was controlling and stated his understanding of the rule of the case to be that if he found any evidence that Jubie was "an agent for the seller, . . . the prosecution would be entitled to have [Jubie's] motion to *acquit* refused at this time." (Italics ours.) We agree that the trial judge correctly interpreted the ruling in *Walker*. The trial judge then stated that he had

> combed the evidence, . . . and I cannot find evidence in the record now that this defendant was working for the seller.
>
> It seems to me all of the evidence I have is consistent with an effort on behalf of the purchaser, and that's my interpretation of the mandate of *State v. Walker*. So I'm going to grant the motion.

In arguing its motion to reconsider, however, the State for the first time urged that the rule of *Walker* was not controlling as to counts 1 and 2 because they were based upon RCW 69.50.401, which had been enacted by Laws of 1971, first extraordinary session, rather than RCW

---

abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information. RAP 2.2(b)(1).

69.40.060, under which Walker had been charged. The State argued that by reason of the 1971 amendment, Jubie should have been convicted of "delivery" without regard to any question of agency.

The trial judge rejected the State's argument and reaffirmed his earlier conclusion, stating that he felt that under the evidence an "acquittal or dismissal" was appropriate. While we are not satisfied that the trial judge was correct in his appraisal of the effect of the statutory change,[3] we conclude that Jubie's constitutionally guaranteed protection from double jeopardy bars the State's appeal.

In *United States v. Jenkins*, 420 U.S. 358, 43 L. Ed. 2d 250, 95 S. Ct. 1006 (1975), the United States Supreme Court was confronted with Jenkins' contention that his constitutional protection against double jeopardy barred an appeal by the government after a dismissal at the close of a "bench" trial. The Court of Appeals for the Second Circuit dismissed the government's appeal "for lack of jurisdiction on the ground that the Double Jeopardy clause prohibits further prosecution." *United States v. Jenkins*, 490 F.2d 868, 880 (2d Cir. 1973). Judge Lumbard dissented on two grounds: First, an appeal by the government was permissible since the District Court had properly characterized its action as a dismissal rather than an acquittal. The District Court's decision was essentially a legal determination construing a statute on which the indictment was based and not really an adjudication on the merits in the sense that it rested on facts brought out at trial. Second, even if the District Court did acquit the defendant, the double jeopardy clause does not stand as an absolute barrier against appeals by the government; there is a societal interest to be weighed in determining the appealability of the decision.

In ruling to affirm the Court of Appeals and thus reject

---

[3] *See State v. Sherman*, 15 Wn. App. 168, 547 P.2d 1234 (1976).

Judge Lumbard's reasoning, the United States Supreme Court pointed out that

[s]ince the Double Jeopardy Clause of the Fifth Amendment nowhere distinguishes between bench and jury trials, the principles given expression through that Clause apply to cases tried to a judge.

*United States v. Jenkins, supra* at 365. The court then observed that in a "bench trial," the judge both finds the facts and rules on questions of law and that

a general finding of "not guilty" may rest either on the determination of facts in favor of a defendant or on the resolution of a legal question favorably to him.

*United States v. Jenkins, supra* at 366-67.

Its review of the record at trial did not permit the Supreme Court to conclude, as did Judge Lumbard in his dissent, that the trial judge's ruling was "essentially a legal determination construing [a] statute." *United States v. Jenkins,* 490 F.2d 868, 882 (2d Cir. 1973) (dissenting opinion). On the contrary, the Supreme Court could not determine from the record at trial whether the trial judge's dismissal was "attributable to an erroneous conception of the law" after resolving against the defendant "all of the factual issues necessary to support a finding of guilt." *United States v. Jenkins, supra* at 367. Because of its uncertainty, the court concluded:

Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause, and therefore for the determination of appealability under 18 U. S. C. § 3731, that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor. To subject him to any further such

proceedings at this stage would violate the Double Jeopardy Clause:

*United States v. Jenkins, supra* at 369-70.

As is pointed out in *State v. Ridgley,* 70 Wn.2d 555, 424 P.2d 632 (1967), the language of the Washington Constitution is similar to that of the United States Constitution. In *Ridgley,* at pages 556-57, the following language from *Green v. United States, supra* at 188 is quoted with approval:

> "Thus it is one of the elemental principles of our criminal law that the Government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous."

In *Ridgley,* the cause was tried to the court sitting without a jury. After hearing all of the evidence offered by both the State and the defendant, the case was submitted to the court for its determination on the merits. The court ordered the case dismissed on the grounds of insufficient evidence. Under these circumstances, our Supreme Court determined that "[a]ll of the elements establishing double jeopardy are here present." *State v. Ridgley, supra* at 557.

Here, after considering the defendant's initial challenge to the sufficiency of the evidence and the State's motion to reconsider, the trial judge adhered to his finding that Jubie's participation in the transactions was limited to "an effort on behalf of the purchaser." Clearly, this was a finding of fact which required the weighing of the State's evidence. It is of no significance that the ruling was made on a challenge to the sufficiency of the evidence when the State rested. At that point, the judge was required to resolve all inferences in the State's favor, but the question of Jubie's guilt or innocence was submitted on its merits.

As to count 3 charging a "sale," there is no challenge by the State. The trial judge found as a fact that Jubie did not sell and that he did not aid or abet a sale. As to counts 1 and 2, the trial judge's express finding that Jubie acted only in behalf of the officer who sought him out negates a finding that Jubie "delivered" the drugs. At most, he "accepted"

delivery for the officer. But in any event, if, as in *Jenkins*, we were unable to say with assurance whether the dismissal was a resolution of the factual issues against the State,

[t]he trial, which could have resulted in a judgment of conviction, has long since terminated in [Jubie's] favor. To subject him to any further such proceedings at this stage would violate the Double Jeopardy Clause:

*United States v. Jenkins, supra* at 370.

The trial judge may have erred in finding that Jubie acted only in behalf of the officer, but as held in *Green v. United States, supra* at 188, even though Jubie's acquittal "may appear to be erroneous," he was nevertheless found not guilty as a matter of fact. When the State rested, it submitted the case on its merits. The State has no right of appeal "following an acquittal of an accused person after a trial on the merits." *State v. Ridgley, supra* at 558.

Affirmed.

CALLOW, J., concurs.

SWANSON, J. (dissenting)—The majority opinion affirming the trial court is based solely upon the conclusion that the trial court's order of dismissal is not appealable. I disagree. CAROA 14(8) (5) states,

Any order which in effect abates or determines the action, or discontinues the same, otherwise than by a verdict or judgment of not guilty

may be appealed by the State. Because the order of dismissal abated, determined, or discontinued the action, it is necessary only to decide whether the order of dismissal is in effect a "judgment of not guilty."

I first observe that the issue is considered sua sponte; consequently we do not have the benefit of either counsel's research and argument.

The order of dismissal from which the appeal is taken recites in part as follows,

This matter having come on for trial on September 25, 1974 and the State being present and represented by

David G. Metcalf, Deputy Prosecuting Attorney, and having called several witnesses and rested its case and the defendant being present and represented by David C. Mitchell, Snohomish County Public Defender Association, having moved for dismissal after the State rested and the Court having examined the evidence and considered the briefs and arguments of each counsel and being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all counts of the above-entitled cause are dismissed for failure of the State to meet its burden in the presentation of its case.

The right of the State to appeal from an alleged erroneous dismissal of a criminal charge at the conclusion of the presentation of the State's evidence was settled in *State v. Brunn*, 22 Wn.2d 120, 154 P.2d 826, 157 A.L.R. 1049 (1945). If the trial court's ruling in the instant case was in response to a motion of dismissal based upon a challenge to the sufficiency of the evidence and did not involve a weighing of the evidence by the trial judge, the State's appeal is proper. But if the dismissal occurred after a trial on the merits, as in *State v. Ridgley*, 70 Wn.2d 555, 424 P.2d 632 (1967), relied upon by the majority, clearly the State has no right of appeal. The majority opinion, therefore, rests solely on the ground that the instant case was submitted to the trial judge on its merits when the defendant moved for dismissal at the close of the State's case. My examination of the record does not support that conclusion. Nowhere in defendant's brief on appeal is there any claim that his request for dismissal was other than a motion to dismiss on the basis of insufficient evidence. Consequently, his brief discusses only the standard for reviewing a challenge to the sufficiency of the evidence. *See* Trautman, *Motions Testing the Sufficiency of Evidence*, 42 Wash. L. Rev. 787 (1967).[4]

---

[4]Pertinent statements in defendant's brief are as follows: At page 12, defendant's brief states, "The governing legal rule . . . when there is a challenge to the sufficiency of the evidence, is that the moving party admits the truth of the evidence against him and all reasonable inferences against him. . . ." (Citations omitted.) Again, on page 15 of defendant's brief, it is stated, "The evidence of delivery of a controlled substance was not sufficient to go to trier of fact." He

Further, a review of the record of the proceedings before the trial court does not indicate that the defendant made an election to stand on his motion, nor is there any indication that the trial judge exercised his option to weigh the evidence and rule as a matter of fact. Therefore, the conclusion seems inescapable that the trial judge reviewed the evidence pursuant to the rules applicable to a challenge to the sufficiency of the evidence and determined that there was no evidence providing a basis for finding a nexus between the seller of the drugs and the defendant.[5]

On this record, I cannot conclude otherwise than that the case was not submitted to the trier of fact on its merits, but dismissed as a matter of law for lack of sufficient evidence to go to the trier of fact. The order of dismissal is not tantamount to a "judgment of not guilty," but does abate the action and is therefore appealable by the State.

Further, I believe the 1971 amendment discussed in the majority opinion is applicable and would permit the defendant to be convicted of "delivery" without regard to any question of agency. I would reverse and remand for new trial.

Petition for rehearing denied October 11, 1976.

Review by Supreme Court pending February 10, 1977.

---

states on page 28, "There was insufficient evidence of sale of a controlled substance by the defendant to go to the trier of fact." In the summary and conclusion of defendant's brief, page 30, it is stated, "The holding of the trial court that there was not sufficient evidence to proceed beyond the state's case was one based on proper law and consistent with the application of that law to the facts presented."

[5] A case illustrative of the difficulty in determining whether the trial judge ruled as a matter of fact or law is *Jacobs v. Brock*, 66 Wn.2d 878, 406 P.2d 17 (1965), in which the majority of the justices said at page 882,

> In examining the trial court's oral opinion we find nothing that indicates the testimony of the witnesses was disbelieved, or that the trial court weighed the evidence.

The dissent signed by four justices said at page 888,

> The italicized words [of the oral opinion] show a balancing and weighing of evidence to determine how persuasive it was.