STATE of Utah, Plaintiff and Appellee,

v.

Jason EWELL, Defendant and Appellant.

No. 920379–CA.

Court of Appeals of Utah.

Aug. 17, 1993.

Rehearing Denied Sept. 10, 1993.

Charles F. Loyd, Jr., Elizabeth Holbrook, Salt Lake Legal Defender Ass'n, Salt Lake City, for appellant.

Jan Graham, State Atty. Gen., Charlene Barlow, Asst. Atty. Gen., Salt Lake City, for appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Appellant, Jason Ewell, appeals his convictions of aggravated robbery, claiming the trial court should have granted a mistrial due to a juror's possibly prejudicial statement during voir dire and claiming the court misapplied the firearm enhancement statute. We affirm in part and reverse in part.

On December 12, 1991, Ewell was tried to a jury on one count of aggravated robbery.

On the second day of the jury trial before Judge Sawaya, defense counsel moved for a mistrial on the basis that he had just learned that one of the jurors, Jeffrey Bogaard, had been excused for cause from Judge Rokich's courtroom two days earlier due to Bogaard's statement during voir dire that a defendant's choice not to testify might affect his decision. In the earlier trial, Judge Rokich stated, "Now, there's a jury instruction to the effect—that will be given to those finally chosen—that the defendant does not have to testify if he doesn't desire to do so. Would you hold that against him, if he didn't testify?" Bogaard responded, "I'm not sure if it would sway my opinion one way or another. I would want—depends on the course of the trial, it might sway me. I have no opinion one way or another. Depending on what comes out, it might have an effect." Shortly after giving this answer, Bogaard listened to Judge Rokich lecture him on a defendant's constitutional right to remain silent and on the presumption of innocence.

In the second trial, Judge Sawaya explained:

> Under the law, ladies and gentlemen, a defendant charged with a criminal offense is presumed to be innocent until he's been proved guilty beyond a reasonable doubt. If the evidence doesn't rise to that level then your duty as jurors would be to return a verdict of not guilty. The defendant has the right to remain silent meaning he doesn't have to take the stand and testify unless he wishes to. The Defendant may be satisfied with the evidence presented by the state and feel that there's nothing to add to it. Are there any of you who feel you cannot afford to the defendant the benefit of the presumption of innocence and his right to remain silent?

No jurors responded.

Defense counsel challenged for cause the continued seating of Bogaard, arguing that the juror's answers were inconsistent and

that therefore he may have been dishonest when he answered Judge Sawaya's question, and thus the juror's ability to be fair was questionable. The judge denied the motion, stating that during the voir dire in the present case, he had "instructed [the jurors] and part of that was that the defendant has a right not to testify and that his failure to testify is not a circumstance that you can hold against him and no presumptions against him can be raised." The court concluded that "I am satisfied that Mr. Bogaard and all the members of this panel are willing to follow the law of the case as I state it and that no adverse presumption would be raised against the defendant." The jury found Ewell guilty as charged.

In a separate case, Ewell pleaded guilty to one count of aggravated robbery on January 12, 1992. On February 28, 1992, the court sentenced Ewell for both convictions as follows: one term of five years to life with a one year firearm enhancement for the first conviction, another term of five years to life with a one year firearm enhancement on the second conviction, and an additional five year firearm enhancement because Ewell had been convicted of two crimes involving firearms. Ewell appealed both cases, claiming the court erred in failing to grant a mistrial due to juror bias, and in misapplying the five-year firearm enhancement statute. This court consolidated the appeals.

## MOTION TO SUPPLEMENT THE RECORD

Initially, we address Ewell's motion to supplement the record with the transcript of the voir dire in Judge Rokich's courtroom in *State v. Ramirez,* two days before Ewell's trial. The State does not object to this court taking judicial notice of the portion of the *Ramirez* transcript pertaining to this case.[1] Given that the parties do not dispute the contents of the transcript, we grant the motion to supplement the record with the por-

---

1. Rule 201(b)(2), Utah Rules of Evidence, provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is ...

capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

tion of the *Ramirez* transcript regarding Bogaard's voir dire.

## MISTRIAL

We next consider the State's claim that Ewell waived his claim that the trial court erred in denying his motion for a mistrial because defense counsel failed to ask the court to interrogate Bogaard about his voir dire answer. In *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Court stated in a footnote that if a party thinks a voir dire answer is factually incorrect at the time of a voir dire examination and the party chooses not to interrogate the juror further regarding the voir dire answer, the party would be barred from later challenging the composition of the jury. *Id.* at 550 n. 2, 104 S.Ct. at 847 n. 2.

■ The State claims that under *McDonough*, counsel must ask the court to interrogate the juror in order to preserve the issue on appeal. We disagree. First, the Court in *McDonough* did not base its holding on the waiver issue. Therefore, the statements in the *McDonough* footnote are dicta. Second, in this case, defense counsel was not aware that Bogaard's voir dire response was possibly inconsistent with a previous response until after voir dire had concluded. Therefore, *McDonough* does not require this court to bar Ewell from raising his claim that the trial court erred in denying his motion for a mistrial.

As a general rule, an attorney must timely object in a clear and concise manner. *State v. Schreuder*, 726 P.2d 1215, 1222 (Utah 1986). In this case, defense counsel moved for a mistrial on the basis that Bogaard's ability to be fair was questionable. Thus, the defense counsel alerted the court to the issue. Because the objection was timely, clear, and concise, we hold that Ewell is not barred from raising the issue on appeal.

■ We next address whether the trial court erred in failing to grant a mistrial due to Bogaard's differing responses during voir dire in Judge Rokich's courtroom and later in Judge Sawaya's courtroom. To determine whether a juror, challenged for answering falsely on voir dire, should be excused, we apply the two-prong *McDonough* test. *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992) (referring to the test outlined in *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850). Under the *McDonough* test, a moving party is entitled to a new trial if the party demonstrates that (1) "a juror failed to answer honestly a material question on voir dire," and (2) "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850.

■ Here, Bogaard had earlier been excused for cause from Judge Rokich's courtroom based on his answer to the judge's voir dire question as to whether Bogaard would hold it against the defendant if he did not testify. Bogaard did not absolutely state that he would hold it against the defendant. Instead, he said he was not sure whether it would sway his opinion. He then said he had no opinion on the subject. Shortly after this answer, Bogaard listened to Judge Rokich lecture him on a defendant's constitutional right to remain silent and on the presumption of innocence.

Judge Sawaya's question, while similar to that asked by Judge Rokich, was more extensive and contained more information about a defendant's right not to testify and the presumption of innocence. Briefly, Judge Sawaya informed the jury that a defendant has the right to remain silent, does not have to testify, and is nevertheless presumed innocent. Given the difference between the two questions and the two lectures, Bogaard's answer does not appear dishonest. *See McDonough*, 464 U.S. at 556, 104 S.Ct. at 850. We therefore need not reach the second prong of the *McDonough* test.

We conclude that the trial court did not err in failing to either conduct further investigation or grant Ewell's motion for a mistrial.

## ENHANCEMENT

■ The remaining issue is whether the trial court erred in imposing the additional

five year firearm enhancement pursuant to Utah Code Ann. § 76–3–203(4) (1990).

Ewell claims the trial court misconstrued this statute when it assessed a mandatory five year enhancement for a second conviction involving a firearm. Ewell argues that the statute applies only where one, who has been *sentenced* for a firearm felony, is later *convicted* of another firearm felony. Ewell claims that both convictions preceded the sentencing. Therefore, there was no second or subsequent conviction involving a firearm to trigger this section.

We agree. The relevant portion of section 76–3–203(4) is as follows, with our emphases:

A person who has been convicted of a felony may be sentenced to imprisonment for an indeterminate term as follows:

(4) Any person who has been *sentenced* to a term of imprisonment for a felony in which a firearm was used ... and is *convicted* of another felony when a firearm was used ... shall, in addition to any other sentence imposed, be sentenced for an indeterminate term to be not less than five nor more than ten years to run consecutively and not concurrently.

We interpret a statute "according to its literal wording unless it would be unreasonably confusing or inoperable. It is presumed that a statute is valid and that the words and phrases used were chosen carefully and advisedly." *Amax Magnesium Corp. v. Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990);

accord *Gleave v. Denver & Rio Grande W. R.R. Co.*, 749 P.2d 660, 672 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988). We independently review a trial court's interpretation of statutory law for error. *State v. James*, 819 P.2d 781, 796 (Utah 1991).

Given our assumption that the legislature chose carefully and advisedly the terms "sentenced" and "convicted," we reject the State's contention that pursuant to this statute, "defendant was not *convicted* of either crime until he received his sentence." We hold that the legislature meant that a court may impose the five-year firearm penalty only where a defendant has first been *sentenced* in a firearm felony case and then is *convicted* of another firearm felony. *See State v. Archuletta*, 526 P.2d 911, 912 (Utah 1974) ("there is nothing to construe where there is no ambiguity in the statute").

We therefore reverse the five year enhancement portion of Ewell's sentence and affirm the court's order in all other respects.

JACKSON, Judge (concurring):

I concur with the result reached today. However, I write separately to point out that the term "convicted," as used in Utah Code Ann. § 76–3–203(4) (1990), means the establishment of guilt, not the imposition of the judgment and sentence upon a finding of guilt. While I recognize that the word "convicted" is used in either context in various statutes and procedural rules,[1] it is apparent that the legislature used the term "convict-

---

1. The word "conviction" is capable of conveying two meanings. First, "conviction" has a common meaning indicating a finding of guilt. *See State v. Stewart*, 171 P.2d 383, 385 (Utah 1946) (a plea of guilty amounts to a "conviction"); *State v. Garcia*, 99 N.M. 466, 471, 659 P.2d 918, 923 (Ct.App.1983) ("conviction" refers to a finding of guilt and does not include the imposition of a sentence in the statute at issue); *State v. Smith*, 67 Or.App. 311, 677 P.2d 715, 716 (1984) (entry of judgment of conviction is not equivalent to a conviction for purposes of this statute); *State v. Wimmer*, 449 N.W.2d 621, 622 (Wis.Ct.App.1989) (the word "conviction" in common language and sometimes in statutes signifies the finding that a person is guilty); *State v. Kelly*, 20 Wash.App. 705, 582 P.2d 891, 894 (1978) (a "conviction" is

a finding of guilt, as distinguished from the judgment and sentence, for purposes of habitual criminal statute); *Sands v. State*, 9 Md.App. 71, 262 A.2d 583, 588 (1970) ("conviction" and "sentence" are legally distinct with "conviction" being the determination of guilt and "sentence" being the judgment entered).

Second, the word "conviction" has a more technical meaning referring to the entire criminal procedural process, including the judgment and sentence. *See State v. Duncan*, 812 P.2d 60, 64 (Utah App.1991) ("it is the final judgment of the court on a guilty verdict or plea that constitutes a conviction for impeachment purposes under Rule 609(a)(1)"); *State v. Akana*, 68 Haw. 164, 706 P.2d 1300, 1303 (1985) (a more technical definition of "conviction" includes a judgment or sentence rendered pursuant to an ascer-

ed" in the enhancement statute at issue to mean the establishment of guilt.

The legislature chose to require that a person be "sentenced" to a term of imprisonment and then be "convicted" of another felony using a firearm before the enhanced penalty would be imposed. If the legislature had intended the word "convicted" to include the sentencing portion of the criminal procedure, it would have used the term "sentenced" twice rather than "sentenced" and then "convicted."

Further, several courts, interpreting the word "conviction" in statutes involving enhanced penalties for repeat offenders, use the more common definition of conviction, namely, the establishment of guilt by plea, jury verdict or finding of the court. *See People v. Lindsey*, 249 Cal.App.2d 6, 57 Cal. Rptr. 190, 193 (1964); *Marcum v. State*, 239 Ind. 179, 154 N.E.2d 376, 377–78 (1958); *State v. Kramer*, 235 N.W.2d 114, 115–16 (Iowa 1975); *State v. Smith*, 650 S.W.2d 640, 641 (Mo.Ct.App.1983); *State v. Burk*, 101 N.M. 263, 680 P.2d 980 (Ct.App.1984); *Padilla v. State*, 90 N.M. 664, 666, 568 P.2d 190, 192 (1977); *State v. Dassinger*, 294 N.W.2d 926, 928 (S.D.1980); *State v. Kelly*, 28 Wash. App. 705, 582 P.2d 891, 894 (1978). These courts do not include the imposition of the sentence in the definition of "conviction."

This definition also comports with the purpose of repeat offender enhancement statutes—to discourage continued criminal conduct by imposing a higher criminal penalty for a second similar offense. *See Moore v. Missouri*, 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301 (1895). Twisting the meaning of the word "conviction" to include sentencing would thwart that purpose in cases such as the one before us. "A statute designed to punish a second offender more severely when he has not learned from the

penalty imposed for his prior offense should not be construed to apply before that penalty has had the chance to have the desired effect on the offender." *United States v. Abreu*, 962 F.2d 1447, 1452–53 (10th Cir.1992). Accordingly, for purposes of Utah Code Ann. § 76–3–203(4), it is logical that we find a defendant "convicted" upon the establishment of guilt, not upon sentencing.

BENCH, Judge (dissenting in part):

I concur in the result the main opinion reaches on the juror issue. I respectfully dissent, however, from the reversal of the trial court's application of the firearm enhancement statute, Utah Code Ann. § 76–3–203(4) (1990).

Defendant was charged, in one information, with one count of aggravated robbery. In a second unrelated information, he was charged with one count of aggravated robbery, one count of theft, and one count of theft by deception. The first case was tried to a jury on December 12–13, 1991. The jury found defendant guilty as charged. Defendant later pleaded guilty to one count of aggravated robbery in the other information. The counts of theft and theft by deception were dismissed.

On February 28, 1992, the court sentenced defendant. First, the court sentenced and convicted defendant on the jury verdict. Next, the court sentenced and convicted defendant on the guilty plea. Finally, the court determined that it was required to impose the penalty enhancement under section 76–3–203(4), and sentenced defendant to an additional five years.

Section 76–3–203(4) states, in relevant part:

A person who has been convicted of a felony may be sentenced to imprisonment for an indeterminate term as follows:

---

tainment of guilt); *Department of Transp. v. Edwards*, 519 A.2d 1083, 1084 (Pa.Commw.Ct. 1983) ("conviction" occurs when there is a finding of guilt and the sentence is imposed); *Garcia v. State Bd. of Educ.*, 102 N.M. 306, 309, 694 P.2d 1371, 1374 (1984) ("conviction" in its technical legal sense means final consummation of

prosecution including judgment or sentence rendered pursuant to a verdict, confession, or plea of guilty), *cert. denied*, 102 N.M. 293, 694 P.2d 1358 (1985); *Wimmer*, 449 N.W.2d at 622 (the term "conviction" as used in statutes can include a judgment and sentence of the court upon a verdict or confession of guilt).

(4) Any person who has been *sentenced* to a term of imprisonment for a felony in which a firearm was used ... and is *convicted* of another felony when a firearm was used ... shall, in addition to any other sentence imposed, be sentenced for an indeterminate term to be not less then five nor more then ten years to run consecutively and not concurrently.

(Emphasis added.) In reversing the enhancement imposed under this statute, my colleagues erroneously hold that a conviction precedes a sentence.

A "conviction" is referred to in our rules as a "judgment of conviction" and includes "the plea or verdict, if any, and the sentence." Utah R.Crim.P. 22(c) (1993).[1] *See also State v. Duncan,* 812 P.2d 60, 62 (Utah App.) ("'conviction' refers to the final judgment entered on the plea or verdict of guilty"), *cert. denied* 826 P.2d 651 (Utah 1991).[2] Thus, under our rules, it is not possible to be convicted without first being sentenced. The sentence is part of the conviction.

Under section 76–3–203(4), all that is required for enhancement is that a person must have been sentenced for a felony involving a firearm, and then be convicted of another felony also involving a firearm.[3] The State correctly asserts that "defendant was not convicted of either crime until he received his sentence."

Defendant was sentenced and convicted of two separate unrelated crimes on the same day. At the time defendant was sentenced and convicted on the guilty plea, he had already been sentenced and convicted on the jury verdict. It does not make any analytical or logical difference that he was sentenced for the previous crime only moments before. The fact remains that he was "sentenced" for a crime involving a firearm and then "convicted" for a second crime involving a firearm. Thus, the trial court was correct in its assessment that defendant's sentence should be enhanced pursuant to section 76–3–203(4).

The trial court did err, however, in imposing the enhancement for a fixed five-year term. As conceded by the State, section 76–3–203(4) actually provides that the enhancement for a subsequent conviction shall be "for an indeterminate term to be not less than five nor more than ten years[.]" Therefore, while the trial court properly determined that defendant's sentence should be enhanced, it erred in not sentencing defendant to an indeterminate term.

I would therefore uphold the trial court's application of section 76–3–203(4), and correct the enhancement of defendant's sentence to provide for an indeterminate term.

---

1. Rule 22(c) states, in pertinent part:
   Upon a verdict or plea of guilty or plea of no contest, the court shall impose sentence and shall enter a judgment of conviction which shall include the plea or the verdict, if any, and the sentence.

2. Our decision in this case must not turn on how other states have defined the term "conviction" but on how Utah has defined the term. It is short-sighted for this court to suggest that for some purposes conviction means one thing and for other purposes it means something else.

3. There is nothing in our statute to support the notion, as proposed by the concurring opinion, that the purpose of this statute is to give a defendant who has been sentenced for a felony involving a firearm an opportunity to think about the possibility of a more severe sentence before committing a second similar offense.